```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                 **Crim. Action Nos. 1:01-CR-64**
                                                              **1:02-CR-20**

**CHRISTOPHER PAUL SAVAGE,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTIONS FOR COMPASSIONATE RELEASE [ECF NOS. 168, 23]

Pending before the Court are Defendant's pro se motions for compassionate release [ECF No. 168, 1-CR-64; ECF No. 23, 2-CR-20]. For the reasons discussed herein, the Court **DENIES** the motions.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Defendant Christopher Paul Savage ("Defendant") is incarcerated at the United States Penitentiary ("USP") in Florence, Colorado, with a projected release date of August 16, 2025. ECF No. 171, Exhibit 5, 1-CR-64. On September 4, 2002, a jury found Defendant guilty of one count of felon in possession of a firearm and ammunition; one count of possession of a stolen firearm and ammunition; one count of interstate transportation of a stolen firearm and ammunition; and one count of interstate transportation of a stolen motor vehicle. ECF No. 127, 1-CR-64. Subsequently, Defendant pled guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). ECF No. 16, 2-CR-20. On

1

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTIONS FOR COMPASSIONATE RELEASE**

December 13, 2002, the Court sentenced Defendant to a total of 327 months of incarceration followed by a total of five years of supervised release. ECF No. 152, 1-CR-64; ECF No. 16, 2-CR-20.

On December 2, 2022, Defendant filed a pro se motion for compassionate release in Criminal Action Nos. 1-CR-64 [ECF No. 168] and 2-CR-20 [ECF No. 23], asserting his medical conditions and history of prison assaults constitute an extraordinary and compelling reason to reduce his sentence. He filed a number of supplements to and letters regarding the motions [ECF Nos. 177, 181, 182 in 1-CR-64; ECF Nos. 28, 30, 31, 34 in 2-CR-20]. The Court directed the Government to respond to Defendant's motions for compassionate release [ECF No. 169, 1-CR-64; ECF No. 24, 2-CR-20]. The Government filed its response in opposition on December 22, 2022. ECF No. 171, 1-CR-64; ECF No. 41, 2-CR-20.

## II. ARGUMENTS BY THE PARTIES

Defendant argues he should be released due his current medical condition, which is related to a history of prison assaults. Defendant is currently wheelchair ambulatory and depends upon assistive equipment for mobility. Additionally, he asserts that his mental condition is equivalent to an Alzheimer or dementia patient. ECF No. 168, 1-CR-64; ECF No. 23, 2-CR-20, at p. 8.

On February 27, 2005, Defendant was stabbed, beaten, and thrown from the second-floor tier of the federal housing unit at USP Terre Haute, Indiana. Id. at p. 22. Defendant landed on his

2

head, sustaining a traumatic brain injury, and required medical intervention including a craniotomy. Id.; Id. at p. 24.

Then, on June 9, 2014, Defendant was involved in an altercation at USP Coleman in Florida, which required hospitalization. Defendant was diagnosed with a head trauma, including a subarachnoid hemorrhage and subdural hematoma, and altered mental status. Id. at p. 28. On February 9, 2015, Defendant was assigned a Care Level 3 "due to his vulnerability due to severe brain injury and not being able to cope with a general population institution." Id. However, Defendant's briefing indicates that he is now a Care Level 2. Id. at p. 4.

Defendant is presently serving his sentence at USP Florence-High in Colorado. Defendant contends there have been more assaults without incident reports. Id. at p. 3. Defendant's declarant, Tony Powell, speculates that the incidents stem from rumors that Defendant was a professional fighter because he has a large "UFC" tattoo on his hand. Id.

Defendant argues that his current condition prevents him from being a threat to society. If released, Defendant asserts he has a "willing and caring" fiancé who would assist in his care. Id. at p. 5. Defendant would live with fiancé, Elaina Mills, and seek therapy and in-house employment upon release. ECF No. 177, 1-CR-64, at p. 3.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTIONS FOR COMPASSIONATE RELEASE**

The Government in contrast opposes Defendant's Motion and argues (1) he has failed to establish extraordinary and compelling reasons for compassionate release and (2) the 18 U.S.C. § 3353(a) factors weigh against release. ECF No. 171, 1-CR-64; ECF No. 41, 2-CR-20, at p. 1. Notably, the Government describes Defendant's multiple efforts to escape federal custody, including hiding handcuff keys in his nostrils while on trial in 2002. Id. at p. 2. Defendant thus required additional restraints and security measures while on trial for conduct related to his escape and flee from federal custody. Id. Specifically, the U.S. Marshal's Service had to leg-shackle Defendant to a bucket of concrete under the trial table, which was then covered by a table skirt. Id.

While the Government acknowledges the "terrible time" Defendant has had while in Bureau of Prison ("BOP") custody, it contends that Defendant's life in prison improved when he was transferred to USP Florence-High. Id. at p. 3. In the months leading up to Defendant filing this Motion, he reported to BOP Psychology Services that he was "safe" at USP Florence. Id.; see ECF No. 172, at p. 238. Moreover, the Government contends that Defendant's medical conditions are well-controlled by the BOP. Id. Furthermore, given that Defendant has almost completed his custodial term, he would benefit from the BOP's release planning services. Id. at p. 6.

4

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTIONS FOR COMPASSIONATE RELEASE**

As further elaborated below, the Court agrees with the Government that Defendant has not established extraordinary and compelling reasons for compassionate release, and that the § 3553(a) factors weigh against early release due to the case facts and escape efforts.

### III. DISCUSSION

After imposing a term of imprisonment, a court may only modify its sentence in limited circumstances. See United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). One of these circumstances, compassionate release pursuant to 18 U.S.C. § 3582, permits courts to "reduce the term of imprisonment after making a 'three-step inquiry'": (1) has a defendant exhausted all administrative remedies; (2) does an extraordinary and compelling reason for a sentence reduction exist; and (3) is a sentence reduction consistent with all relevant sentencing factors listed in 18 U.S.C. § 3553(a). See United States v. High, 997 F.3d 181, 185-86 (4th Cir. 2021).

**A. Administrative Exhaustion**

Prior to the First Step Act of 2018 (the "First Step Act"), "district courts could only reduce a term of imprisonment under § 3582(c)(1)(A) 'upon motion of the Director of the Bureau of Prisons.'" United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). In the First Step Act, Congress allowed federal inmates to file motions for

compassionate release directly with the district court after they exhausted their administrative remedies.[1] See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). On July 12, 2022, Defendant submitted an administrative request for compassionate release to the Institutional Warden. ECF No. 168, 1-CR-64; ECF No. 23, 2-CR-20, at p. 7. The Government further acknowledges that Defendant exhausted his administrative remedies. ECF No. 171, 1-CR-64; ECF No. 41, 2-CR-20, at p. 4. Accordingly, Savage has satisfied the administrative exhaustion requirement of § 3582(c)(1)(A).

**B.    Extraordinary and Compelling Circumstances**

Section 3582(c)(1)(A) authorizes a district court to reduce a defendant's sentence, after considering the sentencing factors described in 18 U.S.C. § 3553(a), if the court finds that (1) extraordinary and compelling reasons warrant a sentence reduction and (2) a sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement applicable to compassionate-release

---

[1] A defendant filing a motion for compassionate release must have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or there must be a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." United States v. Muhammad, 16 F.4th 126, 129-30 (4th Cir. 2021) (citation omitted) (finding the district court in error by sua sponte dismissing a motion for compassionate release based on the threshold requirement).

motions is Sentencing Guidelines § 1B1.13. Previously, the Fourth Circuit held in <u>United States v. McCoy</u> that § 1B1.13 was not an "applicable policy statement" limiting a district court's authority to grant compassionate release because the Sentencing Commission had not amended § 1B1.13 to incorporate changes to § 3582(c)(1)(A) made by the First Step Act. 981 F.3d 271, 282 (4th Cir. 2020). However, the Sentencing Commission amended § 1B1.13, effective November 1, 2023, and the amended policy statement now governs Savage's motion for compassionate release.[2]

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. <u>See</u> U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to address the First Step Act's amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy statement sets forth the following list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a reduction in sentence: (1) the defendant's medical condition, including a terminal illness or serious medical

---

[2] Savage filed the pending motion prior to the Sentencing Commission's amendment of § 1B1.13. Nonetheless, as the more-detailed policy statement is now in effect and, from the Court's perspective, are helpful to Savage's position, the Court considers the current policy statement in assessing the motion.

or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the defendant's child, or where the defendant would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that is not retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. Id. § 1B1.13(b)(1)-(6).

As discussed above, Defendant contends that his medical condition, history of assaults,[3] and risk for potential attacks

---

[3] Although the amended § 1B1.13(b)(4) elaborates on when an inmate may be considered for compassionate release as a victim of abuse, Savage does not satisfy the provisions of that amended policy statement. The Court considers Savage's argument about injuries sustained at the hands of other inmates while serving his sentence

qualify as "extraordinary and compelling reasons" for a sentence reduction. Upon careful review, the Court respectfully disagrees.

Defendant's medical conditions, including his mobility and brain injury, do not amount to an extraordinary and compelling reason for release. Medical conditions fall short of an extraordinary and compelling reason when "they are being adequately managed by the Bureau of Prisons (BOP), are not terminal, and do not diminish [the inmate]'s ability to provide self-care." United States v. Taylor, No. CR 6:12-00135, 2023 WL 5001454, at *1 (S.D.W. Va. Aug. 4, 2023) (noting the Defendant's records showed that he had been seen and treated by medical professionals on multiple occasions during his term of incarceration). An extraordinary and compelling reason for a sentence reduction does not exist when an inmate "is receiving treatment for his ailments . . . and his conditions appear to be treated with medication and regular follow-up visits are provided by the institution." United States v. Vang, No. 515CR00038KDBDSC4, 2023 WL 3361193, at *1 (W.D.N.C. May 10, 2023), aff'd, No. 23-6522, 2023 WL 4839579 (4th Cir. July 28, 2023). The fact that an inmate is wheelchair bound is not in-and-of-itself an extraordinary and compelling reason, especially when the inmate can transfer to-and-from the wheelchair without assistance. Id.

---

regardless and, for the reasons stated infra, finds them unpersuasive.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTIONS FOR COMPASSIONATE RELEASE**

The available records support that USP Florence-High is providing adequate care for Defendant's mental and physical conditions. In July of 2022, Defendant reported to BOP Psychology Services that he felt "safe" at USP Florence-High. ECF No. 172, 1-CR-64, at p. 238. His records indicate that he would be seen by Psychology Services "as needed." Id. USP Florence-High further oversees the administration of Defendant's medications for his various ailments. Id. at pp. 233-36.

Additionally, Defendant's mobility is accommodated with a single cell on the first floor, with a lower bunk. ECF No. 172, 1-CR-64, at p. 231. Defendant's records further show that two months prior to filing the subject motions, Defendant was "able to bath self, independent with dressing, able to lead self, [and] independent in toilet and transfer independent." Id. at 245. While the Court is sympathetic, Defendant's medical conditions do not amount to an extraordinary and compelling reason for release even when evaluated under the amended policy statement at § 1B1.13.

Furthermore, "[a]n inmate's reasonable fear of assault by other inmates within the BOP is not an extraordinary or compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A)." United States v. Tate, No. 3:16-CR-74, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022). See also, United States v. McDuffie, No. 4:20-CR-00099-M, 2024 WL 1451096, at *2 (E.D.N.C. Apr. 3, 2024) (finding Defendant's concerns for his personal safety in prison do

10

not establish extraordinary and compelling circumstances justifying an early compassionate release); United States v. Burleson, No. 216CR00046GMN16, 2022 WL 17343788, at *3 n.3 (D. Nev. Nov. 29, 2022), aff'd, No. 17-10319, 2023 WL 3615670 (9th Cir. May 24, 2023), opinion amended and superseded on denial of reh'g and judgment aff'd, No. 17-10319, 2023 WL 5275176 (9th Cir. Aug. 16, 2023)(Defendant's allegations that his "life has been threatened multiple times" and he was unable to protect himself due to his medical conditions were insufficient to demonstrate extraordinary and compelling circumstances).

While Defendant was involved in attacks or altercations at his previous USP designations, the records support that Defendant feels safe at USP Florence-High. And, as discussed above, safety concerns are not enough to meet the high showing required for a compassionate release. Thus, the combination of Savage's medical condition, history of assaults, and risk for potential attacks is not an extraordinary and compelling reason for his release.

### C. Sentencing Factors Under 18 U.S.C. § 3553(a)

Even if extraordinary and compelling circumstances existed, the 18 U.S.C. § 3553(a) sentencing factors weigh against Defendant's release. See High, 997 F.3d at 186 ("In any event, if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must

11

'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.").

Under 18 U.S.C. § 3553(a), the Court must impose a sentence "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. The relevant considerations include the nature and circumstances of the offense, the defendant's history and characteristics, and whether the sentence imposed reflects the seriousness of the offense, promotes respect for the law, deters criminal conduct, and protects the public from future crime. After reviewing the sentencing factors under 18 U.S.C. § 3553(a), the Court finds that they do not support a reduction of Defendant's sentence to time served. Defendant argues that he should be released because his current physical condition prevents him from being a danger to the community and he has support from his fiancé.

The nature and circumstances of Savage's offenses weigh against his release. The facts underlying Defendant's convictions in 1-CR-64 and 2-CR-20 involve Defendant escaping and fleeing from federal custody. While being transported by van through the Northern District of West Virginia, Defendant overpowered prisoner transport guards, took a shot gun with ammunition, and fled into the woods. His efforts to evade capture included stealing a pickup truck, breaking into an abandoned trailer, and sleeping in the woods. While on the run, Defendant robbed a bank in Georgia of

12

approximately $14,300, before being arrested following a high-speed chase. Defendant's offense conduct is further exasperated by his escape efforts during trial and the additional necessary security measures. At sentencing, the Court determined that Defendant's extensive criminal record warranted the imposition of a sentence at the high-end of the guideline imprisonment range.

For these reasons, a term of imprisonment within the guideline range remains necessary to reflect the seriousness of his offenses and provide just punishment. Reducing Defendant's sentence would fail to promote respect for the law and would not provide adequate punishment for his offenses. Moreover, given that Defendant's projected release date is August 16, 2025, he will benefit from BOP's step-down process and release planning, along with subsequent guidance from the U.S. Probation Office once he begins his term of supervised release.

## IV.   CONCLUSION

Defendant has failed to establish extraordinary and compelling circumstances, and the sentencing factors under 18 U.S.C. § 3553(a) weigh against his release. For the reasons discussed above, Defendant's motions for compassionate release are **DENIED** [ECF Nos. 168, 1-CR-64; ECF No. 23, 2-CR-20]; Defendant's *Inquiry of Pending Proceedings Awaiting Review* is **DENIED AS MOOT** [ECF Nos. 181, 182, 1-CR-64; ECF No. 34, 2-CR-20]; and Defendant's remaining motions or filings in support of compassionate release

13

**MEMORANDUM OPINION AND ORDER
DENYING MOTIONS FOR COMPASSIONATE RELEASE**

---

are additionally **DENIED AS MOOT** [ECF Nos. 30. 31, 2-CR-20].

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record via email and to Defendant via certified mail, return receipt requested.

**DATED:** April 30, 2024

*/s/ Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA